**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **U.S. PREMIUM BEEF, LLC, MARK R. GARDINER, SOLE TRUSTEE OF THE MARK GARDINER REVOCABLE TRUST, AS TAX MATTERS PARTNER**,<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES OF AMERICA**,<br><br>Defendant. | ) | **Case No. 17-112** |

## COMPLAINT

Plaintiff Mark R. Gardiner, sole trustee of the Mark Gardiner Revocable Trust ("Gardiner"), as the Tax Matters Partner of U.S. Premium Beef, LLC ("USPB, LLC"), by and through its attorneys and pursuant to 26 USC §6226(a)(2), hereby complains against Defendant United States of America as follows:

### NATURE OF THE ACTION

1. This is a petition for readjustment of a Notice of Final Partnership Administrative Adjustment ("FPAA") disallowing the deduction of a $33,353,523 capital loss from USPB, LLC's 2011 partnership tax return. Because the FPAA is contrary to law and would result in unfair double taxation, USPB, LLC, acting through its Tax Matters Partner, has filed the instant complaint.

### PARTIES

2. USPB, LLC is organized as a Delaware limited liability company and is taxed as a partnership for federal income tax purposes. USPB, LLC's principal place of business is P.O. Box 20103, Kansas City, Missouri.

WA 9256807.2

3. Mark R. Gardiner is the sole trustee of the Mark Gardiner Revocable Trust, which owns 0.398229% of the Class A and Class B units in USPB, LLC. Pursuant to the operative organizational documents of USPB, LLC, Gardiner also serves as the Tax Matters Partner of USPB, LLC within the meaning of 26 U.S.C. §6231(a)(7) for the taxable year at issue. Gardiner's address is P.O. Box 20103, Kansas City, Missouri.

4. Defendant is the United States of America. This is a dispute over the position taken by the IRS in the FPAA issued to USPB, LLC for the taxable year 2011.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction under 28 USC §1346(e) and 28 USC §1331.

6. Because USPB, LLC has its principal place of business in Kansas City, Missouri, venue is appropriate in this district under 26 USC § 6226(a)(2).

7. Pursuant to 26 USC § 6226(a)(2), Gardiner, as Tax Matters Partner of USPB, LLC and on his own behalf, has timely brought this action to obtain review of the FPAA.

8. Gardiner, as Tax Matters Partner of USPB, LLC, has also satisfied the deposit requirements of 26 U.S.C. §6226(e)(1). In accordance with that provision, Gardiner, in good faith, computed the amount by which his federal income tax liability for 2011 would be increased if the partnership items allocated to him were made consistent with the treatment of those items on the USPB, LLC Return for 2011 as adjusted by the FPAA. On February 14, 2017 Gardiner deposited that amount with the IRS with IRS Appeals, Mail Stop 8000STL, 1222 Spruce Street, St. Louis, Missouri 63013.

**FACTUAL BACKGROUND**

9. USPB, LLC is a producer-owned beef marketing company that processes and markets finished beef on behalf of its unitholders and associates. For the taxable year 2011,

USPB, LLC filed a Form 1065 U.S. Return of Partnership Income (the "USPB, LLC Return"). The USPB, LLC Return reported Portfolio Income of $398,889,469 and a capital loss per Schedule D of $33,553,523 for the taxable year 2011. The IRS subsequently conducted an examination of the USPB, LLC Return for the tax year 2011. As a result of that examination, the IRS issued an FPAA ordering that: (a) the capital loss per Schedule D on the USPB, LLC Return be reduced by $33,553,523 and (b) the Portfolio Income on the USPB, LLC Return be increased by the same amount to $432,242,992.

10. The $33,553,523 capital loss at issue was based on USPB, LLC's payment of certain amounts owed to suppliers of cattle ("Ranchers") who had sold cattle to USPB, LLC's predecessor in interest, U.S. Premium Beef, Ltd. ("USPB, Ltd."). USPB, Ltd. was organized as a Kansas cooperative marketing association and was capitalized by shareholders who invested a total of $39 million in 691,845 shares of common stock.

11. USPB, Ltd. purchased cattle from Ranchers to process and market the beef. Some of the Ranchers were shareholders of the USPB, Ltd. and some of the Ranchers were non-shareholders. USPB, Ltd. paid all Ranchers—shareholder Ranchers and non-shareholder Ranchers alike—who sold cattle to USPB, Ltd. in part by issuing Qualified Written Notices of Allocation ("QWNA's"), as defined in 26 USC § 1388(c). The QWNAs represented deferred payment obligations to the Ranchers for cattle they delivered and represented a right to be paid a specified amount at an unspecified time in the future.

12. By structuring these deferred payments as QWNAs, USPB, Ltd. was entitled, pursuant to Subchapter T of the Internal Revenue Code of 1986, as amended, ("IRC"), to deduct the stated amount of the QWNAs from its taxable income when issued, rather than when USPB, Ltd. made cash payments to Ranchers in the stated amount of the QWNAs. The Ranchers were

contractually obligated to include the full amount of the QWNAs in income when the Ranchers received the QWNAs.

13. In 2004, through two transactions required by corporate law, USPB, Ltd. converted to a limited liability company taxed as a partnership. First, USPB, Ltd. merged into a newly-formed Delaware corporation ("USPB Corp.") (the "Merger"). USPB Corp. was formed exclusively for the purpose of effecting the conversion of USPB, Ltd. to a limited liability company taxed as a partnership. USPB Corp. was not a cooperative under Subchapter T. The taxpayer and the IRS agree that the QWNAs created under Subchapter T were extinguished as a result of the Merger.

14. Kansas and Delaware law governing the Merger both required the remaining payment obligations that arose from the Ranchers' sale of cattle to USPB, Ltd. to be assumed by USPB Corp. *See* Kan. Stat. Ann. § 17-1639; Del. Code tit. 8, § 259. To reflect this required assumption of liability, USPB Corp. established payment obligations that it named patronage notices ("Patronage Notices"), with the same aggregate stated amount to be paid to the Ranchers as the extinguished QWNAs ($50,642,154).

15. On August 29, 2004, in the second corporate law transaction and immediately after the Merger, USPB Corp. converted into a Delaware limited liability company, USPB, LLC, under Delaware's formless conversion statute (the "Conversion"). *See* Del. Code tit. 8, § 266 (Delaware formless conversion statute). USPB, LLC has at all times since the Conversion been taxed as a partnership for Federal income tax purposes.

16. Delaware law governing the Conversion required USPB, LLC, to assume all obligations of USPB Corp., such as the Patronage Notices. *See* Del. Code tit. 8, § 266(h); Del. Code tit. 6, § 18-214(e).

17. As a result of the Merger and Conversion, each of USPB, Ltd.'s outstanding 691,845 shares of common stock was replaced by one share of Class A stock and one share of Class B stock of USPB Corp., and then converted into one Class A unit and one Class B unit of USPB, LLC.

18. For Federal income tax purposes, the Conversion involved three steps: (1) a deemed sale by USPB Corp. of all of its assets for their fair market value under IRC § 336, (2) a deemed liquidation of USPB Corp. under IRC § 331, pursuant to which shareholders determined their respective gains or losses by taking into account the fair market value of the assets received in the deemed liquidation, reduced by the amount of the liabilities to which the assets were subject, and (3) a contribution of the assets, subject to the liabilities, to a newly formed partnership, USPB, LLC, under IRC § 721.

19. In the deemed liquidation of USPB Corp. under IRC § 331, USPB Corp.'s assets less liabilities were deemed to be distributed to the USPB Corp. shareholders in exchange for their stock, resulting in recognition of capital gain or loss by USPB Corp. shareholders based on the difference between their stock basis in USPB Corp. stock and their share of the fair market value of assets, less liabilities, received in the deemed liquidating distribution.

20. Before the Merger, USPB, Ltd. commissioned an independent appraisal to value its assets and its liabilities, including its QWNAs.

21. Because USPB Corp. assumed all assets and liabilities of USPB, Ltd. in the Merger and had no other assets or liabilities, it used the appraised values to determine the amounts deemed distributed to USPB Corp. shareholders as a result of the Conversion.

22. The independent appraiser determined that the fair market value of USPB Corp.'s assets for purposes of the IRC § 331 liquidation was necessarily affected by its outstanding

obligation to pay Patronage Notices (the remnant payment obligation from cattle purchases denominated as QWNAs when owed by USPB, Ltd.). Because the Patronage Notices did not have a specific due date, however, the amount by which they impaired the fair market value of USPB Corp.'s assets was uncertain. To account for this uncertainty, the appraisers of USPB Corp.'s assets assumed that the liability would be satisfied at the rate of $5 million per year beginning in 2010, and then discounted that payment stream to present value as of the valuation date.Based on this assumption, the amount by which the Patronage Notice obligations impaired the value of the assets deemed distributed to USPB Corp. shareholders was determined to be $10,550,000, significantly less than their aggregate stated amount of $50,642,154.

23. Because the USPB Corp. shareholders' gain or loss on the deemed liquidating distribution had to be computed based on the fair market value of assets distributed less liabilities assumed (or taken subject to), the valuation of the Patronage Notice obligations at less than their face amount directly affected the computation of capital gains and losses of USPB Corp. shareholders from the deemed liquidating distribution. Specifically, the shareholders were required to report an aggregate of $40,092,154 ($50,642,154 - $10,550,000) *more* capital gain (or less capital loss) than if the Patronage Notices had been treated as having a fair market value equal to their face amount.

24. To illustrate: based on the appraised values, the gross assets deemed distributed to UPSB Corp. shareholders was $104,087,481 and total non-Patronage Notice liabilities was $28,949,646. Thus, without taking into account the Patronage Notice obligations, shareholders would have been treated as receiving an aggregate distribution of $75,137,835. As reduced by the appraised value of the Patronage Notices, shareholders were treated as receiving an aggregate distribution of $64,587,835 in exchange for their stock. Had the amount deemed distributed

been reduced by the stated amount of the Patronage Notices, shareholders would have been treated as receiving an aggregate distribution of $24,495,681 in exchange for their stock, creating a difference of $40,092,154 ($64,587,835 - $24,495,681) *more* capital gain (or less capital loss).

25. This difference was caused solely by the uncertainty regarding when the stated amount of the Patronage Notices, which represented the final payment to the Ranchers for cattle delivered, would be paid.

26. Following the Conversion, USPB, LLC paid the amounts owed to Ranchers under the Patronage Notices more quickly than the appraisers assumed. Rather than paying the Patronage Notices off at the assumed rate of $5 million per year, USPB, LLC paid off a total of $8,511,860 of the Patronage Notices to the Ranchers in 2009 and 2010, and paid off the remaining $42,130,294 of the Patronage Notices to the Ranchers in 2011, seven years after the Conversion. These capital losses reflected the fact that the original reduction in the appraised value of the obligations had been overstated, resulting in a corresponding overstatement of the capital gain (or understatement of capital loss) resulting from the deemed liquidation.

27. Upon payment of the Patronage Notices, USPB, LLC reported capital losses of the amount by which the amount paid ($50,642,154) exceeded the value of the Patronage Notices taken into account in the Conversion ($10,550,00).

28. USPB, LLC claimed these capital losses for 2009 and 2010 totaling $6,737,904. The IRS correctly did not challenge these capital losses.

29. In 2011, USPB, LLC paid the final $42,130,294 that it owed to Ranchers from cattle purchases (represented by Patronage Notices) and claimed a capital loss of $33,353,253.

30. The IRS's Internal Revenue Manual 4.11.7.5 (12/1/2004) provides: "If the amount of a liability distributed is unknown at the time of distribution, or so speculative that it is

properly disregarded in computing a shareholder's gain/loss on liquidation, any subsequent payment of the debt by the shareholder should be a capital and not an ordinary loss. This is based upon the theory that the original capital gain on the liquidation was overstated [see *Arrowsmith*, 344 U.S. 6 (1952)]."

31. Analogously, the rules under Treasury Regulations § 1.752-7 treat the value of Treas. Reg. § 1.752-7 liabilities as "the amount of cash that a willing assignor would pay to a willing assignee to assume the Treas. Reg. § 1.752-7 liability in an arm's-length transaction" and, where a Treas. Reg. § 1.752-7 liability is satisfied for more than its value at the time the partnership assumes the liability, the partnership is entitled to a deduction for amounts paid in excess of the value of the liability when it was contributed. *See* Treas. Reg. §1.752-7(e)(2)(iii).

32. Accordingly, USPB, LLC's decision to claim the capital losses for each of 2009, 2010, and 2011 was consistent with Federal tax law and IRS guidance.

33. The FPAA disallowed the deduction of the capital loss on USPB, LLC's 2011 tax return. The IRS's position in the FPAA is based on the erroneous proposition that the QWNAs constituted preferred stock in USPB, Ltd., even though the facts and the law indicate that QWNAs were not preferred stock. Based on this erroneous premise, the IRS then takes the position that the QWNAs were converted from preferred stock to preferred partnership interests as a result of the Conversion and that all of the parties who were owed funds under Patronage Notices became partners of USPB, LLC. Based on these faulty and mistaken factual and legal determinations, the IRS erroneously concludes that the payments made by USPB LLC to discharge the Patronage Notices were non-deductible distributions of property to partners and former partners pursuant to IRC §§ 731(b) and 736(a).

34. As a factual matter, neither the QWNAs nor the USPB Corp. Patronage Notices were preferred stock of USPB, Ltd. or USPB Corp. USPB, Ltd.'s and USPB Corp.'s articles of incorporation authorized preferred stock that neither company issued. To the contrary, they were separately capitalized with over 600,000 shares of stock issued in exchange for $39 million in capital. Likewise, unlike some circumstances in which liabilities are treated as equity, here there was no identity between shareholders and QWNA/Patronage Notice holders. The QWNAs and Patronage Notices were held by all cattle suppliers regardless of whether they were shareholders in USPB, Ltd. or USPB Corp.

35. The IRS's position that the QWNAs and Patronage Notices that replaced the remaining payment obligation were stock also is not supported by Federal tax law. There is no statute, regulation or federal judicial opinion indicating that QWNAs or the replacement Patronage Notices similar to those at issue should be treated as stock for purposes of IRC § 331.

36. There is, however, authority to the contrary. For example, in *Gold Kist Inc. v. Commissioner*, 104 T.C. 696 (1995), *rev'd on other grounds by Gold Kist v. Commissioner*, 110 F.3d 769 (11th Cir 1997), the IRS argued, and the Tax Court held, that QWNAs are *not* stock for purposes of the related provisions of IRC § 311(a).

37. The IRS has cited no authority suggesting that the QWNAs or USPB Corp. Patronage Notices should have been treated as stock for purposes of the Merger or the Conversion.

38. The IRS's position in the FPAA that the Patronage Notices were converted into preferred partnership interests in USPB, LLC is incorrect.

39. The IRS has cited no legal authority to support its conclusion that the Patronage Notices were converted into preferred partnership interests in the Conversion.

40. The QWNAs were extinguished as a result of the Merger.

41. The continuing obligations to make final cattle payments represented by the Patronage Notices to the Ranchers (many of whom had no relationship with USPB, LLC other than the right to be paid) were not preferred partnership interests in USPB, LLC.

42. USPB LLC's Limited Liability Company Agreement does not confer any partnership interest based on the Patronage Notices. Moreover, USPB, LLC has not treated Ranchers as partners merely because they were owed money under Patronage Notices. The Patronage Notices were considered to be and were treated by USPB, LLC's board of directors as fixed obligations to make payments to the Ranchers who had delivered cattle to USPB, Ltd., regardless of whether or not those persons were shareholders of USPB, Ltd. when they sold cattle, shareholders of USPB Corp. at the time of the Conversion, and/or unitholders in USPB, LLC after the Conversion.

43. In addition to lacking foundational legal and factual support, the FPAA would also result in unfair double taxation of those Ranchers who were shareholders of USPB, Ltd. and who later became unitholders of USPB, LLC. The first level of taxation for such Ranchers occurred when they received the QWNAs and were obligated to pay ordinary income tax on the full amount of the QWNAs. The same shareholder Ranchers of USPB Corp. were taxed a second time as a result of the required write-down of the Patronage Notices in the deemed liquidation under IRC § 331. This second level of taxation, which was imposed solely on USPB Corp. shareholder Ranchers as opposed to the whole group of Ranchers, could only be remedied by allowing the deduction by UPSB, LLC of the amount it paid in satisfaction of the Patronage Notices in excess of $10,550,000.

**COUNT ONE: THE IRS ERRED IN DISALLOWING THE CLAIMED CAPITAL LOSS**

44. Plaintiff re-alleges paragraphs 1 to 43, as if fully set forth herein.

45. USPB Corp. properly treated the obligations created by the Patronage Notices as liabilities for purposes of the deemed liquidation of USPB Corp. in the Conversion. The QWNAs were not stock of USPB, Ltd. before or during the Merger and the Patronage Notices were not stock of USPB Corp. for purposes of the deemed liquidation under IRC §331.

46. The appraisal of the Patronage Notice obligations created by the remaining payment for cattle represented by QWNAs at less than their stated amount caused the shareholders of USPB Corp. to incur more capital gain (or less capital loss) than would have been the case if the stated amount of the Patronage Notice liability that arose from the QWNAs had been used to determine shareholder gain or loss in the deemed liquidation.

47. When the Patronage Notices were paid off more quickly than assumed in 2009, 2010 and 2011, the former shareholders of USPB Corp., who were now unitholders in USPB, LLC, were entitled to claim capital losses to the extent those payments exceeded the appraised value of the Patronage Notice obligations used to compute shareholder gain or loss in the Conversion. USPB, LLC claimed this loss on their behalf and allocated the loss among its partners. As a matter of equity, it is the only fair way to treat all Ranchers who delivered cattle.

48. The IRS's determination as set forth in the FPAA to disallow the capital loss on USPB's 2011 Return is erroneous and USPB, LLC is entitled to the capital loss claimed on its 2011 Return.

**PRAYER FOR RELIEF**

WHEREFORE, Gardiner, as Tax Matters Partner for USPB, LLC, prays for the following relief: (1) that this Court determine that the USPB, LLC Return filed for the year 2011 was

correct as filed; (2) that this Court determine that the IRS's adjustments as set forth in the FPAA are erroneous; (3) that this Court order that the United States return and refund all amounts deposited with the Secretary of the Treasury with respect to this action, together with interest thereon as allowed by law, and pay all other amounts that may be legally due, including costs associated with this litigation, and (4) that this Court grant such other and further relief as the Court deems just and appropriate.

**DATED**: February 14, 2017.

Respectfully submitted,

SPENCER FANE LLP

/s/ Douglas M. Weems
Douglas M. Weems MO Bar #41165
Angus W. Dwyer MO Bar #66443
1000 Walnut, Suite 1400
Kansas City, Missouri 64106
Tel: (816) 474-8100
Fax: (816) 474-3216
dweems@spencerfane.com

Per Ramfjord (*pro hac vice* forthcoming)
Mark J. Hanson (*pro hac vice* forthcoming)
Gregory F. Jenner (*pro hac vice* forthcoming)
Adam D. Schurle (*pro hac vice* forthcoming)
STOEL RIVES LLP
760 SW Ninth Ave, Suite 3000
Portland, OR 97205-2584
Direct: (503) 294-9257
Fax: (503) 220-2480
paramfjord@stoel.com
mark.hanson@stoel.com
greg.jenner@stoel.com
adam.schurle@stoel.com
ATTORNEYS FOR PLAINTIFF